Judge Underwood
delivered the opinion of the Court.
In October, 1827, Barnett made oath before a justice of the peace, “that Reuben J. Eastin and William W. Pullins, stand justly indebted to him, in the sum o¡ forty five dollars, for rent of a certain plantation, lying, &c. (giving a description of it) which rent is now due and payable in money.”
Thereupon, the justice issued his warrant, directed to any sherififor constable, commanding them to dis-train, &c. Barnett is styled in the warrant, "agent for Thomas Montgomery.” Franklin, asa constable levied the warrant on, or distrained a parcel of corn, between ten and twenty barrels, in the crib of Mitchell. The defendants with a waggon, entered the close of Mitchell, took the corn, and carried it to Pullins, where it was deposited by them.
Mitchell claimed the corn as his, under a purchase from Eastin, who, in 1824, rented Hie farm on which the corn had been raised, from Barnett, for two years, and gave Pullins as ids surety, for the payment of the rent. After the expiration of his lease, Eastin rented for two years more, but gave no surety for the payment of the rent. The corn in question, was part of the crop of 1827, which was one of the years that Eastin occupied the farm under- the second lease. The rent reserved under the second lease, was payable in notes, on the bank of the commonwealth.
*478 Mitchell considering himself injured by the entry of the defendants, within his close, and the removal of the corn as aforesaid, brought an action of trespass vi et or mis, for the forcible entry on bis close, and carrying away the corn.
The defendants plead not guilty, with leave to give special matter in evidence.
Upon the trial, the plaintiff proved, that he had purchased the corn in good faith from Eastin, and that it had been hauled from the land where it was raised, and put into the crib, standing in his own yard where it had been taken. It was also proved, that Pullins, a defendant, in the distress warrant, owned goods and chatties, while the warrant was in the constables hands,amply sufficient to discharge the' amount of the rent claimed in the warrant, and all costs, and that he lived more convenient to the constable, than Mitchell.
The defendants offered the distress warrant in evidence, to which the plaintiff objected, contending, that it was void upon its face.
1st. Because Thomas Montgomery should have made oath before the justice, as to the amount of rent due, and in arrear, instead of Barnett.
And 2d. Because the warrant did not state for what year, the rest became due, or when it fell due. The court overruled the objections, and permitted the warrant to be used as evidence.
After the evidence was concluded the defendants moved the court, to instruct the jury, “that if they found, that the defendant Franklin, was a constable, and that the corn was raised on the premises,, leased by Eastin, from Barnett, and that Franklin as constable, entered and took said corn, under said distress warrant, they must find for Franklin.” The plaintiff resisted the instruction, but the court overruled the objections, and gave it.
' The plaintiffmoved the court to instruct the jury, that if they found, that the corn was raised on .the leased premises, after the lease, in “which Pullins was bound, had expired, and that Mitchell had more than *479 ten days before the distress warrant issued bona fide, purchased and obtained possession of the corn (rom Easlin, that the warrant in this case, did not Franklin in taking, or causing the corn in contest, to be taken out of the plaintiff’s crib.”
The court refused this instruction, and informed the jury, “that a landlord, had alien on the produce of the farm rented, until his rents were paid, and that a crop raised under a new lease, was bound for rents in arrear under an old lease, although another per-sonwas bound forrentsductheunderfirstlease. That as to defendant Barrett, if the rents due on the lease, for which Puilins was bound, were paid before the distress warrant issued; said warrant was no justification for said Barrett, in this case.”
The plaintiff moved for two other instructions both of which were refused. They are as follows:
1st. “That if the jury found that the plaintiff had bona fide, purchased and obtained possession of the corn in contest, before the warrant in this case issued, and that the persons against whom said warrant issued, had in Madison county, personal property, and slaves amply suflhient, and accessible to the defendant Franklin, to satisfy the warrant in this case, and all costs, that then, said warrant was no justification to said officer, in taking or causing the corn to be taken from the plaintiff’s possession.
And 2d. “That the warrant in this case, was no justification to Franklin, to go on to the plaintiff’s land, or to cause others to go there and seize and take the corn away”.
The jury found a verdict of not guilty as to Franklin, and guilty as to Barnett, and assessed (he plaintiff’s damage to §12, upon which the court rendered judgment in favor of Franklin for his costs, and against Barnett, for the damages assessed, and no more, and the costs. The plaintiff moved for a new trial. The court refused it. The plaintiff prosecutes a writ of error, with supersedeas, and by assignment of errors, questions the propriety of every opinion given by the court, in the progress of the trial, and the decision of the court, in refusing a new trial.
Statute of 1811, when ther.uit is reserved in acl'oTvhedn-ia, of 1748, Jtl. Digest, oateá tipon" the opinion, that distress K.TS-“an^démise o^l^se6™158 contract, whatsoever.”
Although the amount in controversy, is inconsidera-kks, yet the principles involved, are of great import-anee to society, and require an examination, and^..r-position of the statutes regulating distress for rent. The right of the landlord to distrain for rent in arrear was incident, by the principles of the common law, to every rent service, and to most cases of rent charge because, in these, the power to distrain was generally reserved on the part of landlord in the deed, creating the tenancy. By the operation of several statutes in England, the power to distrain for rent, was at length extended, so as to embrace cases of rent seek. The principles and policy of these British statutes, which greatly mitigated the rigour of the common law remedy, by distress, have been adopted, according to the learned chancellor, Kent as the basis of the American 'law, in most, if notin all the states, in which distress for rent is tolerated.
The act of 1748, of our parent state, 11. Digest, 10R2, is predicated upon the opinion, that distress for ¡n arrear js allowable‘"upon any demise, lease contract whatsoever,” by which rent is reserved, and the general tenor of our own statute of 1811, shews, that it was the intention of the legislature, to au(horize a distress for rent, in all cases, where the rent reserved, is payable in money. So that now, the distinctions which were anciently made between the var*ous hinds of rent, and the remedies given to enforce payment, suitable to the particular nature of the rent are more matters of curious learning, than of prac-uliiiv-
feudal Barons, commuted the military service due by their vassals, for a certain rent, issuing out of the lands. Non payment of the rent, like the non performance of military service, was just cause for forfeiting the feud or vassals tenement.
The power of distress, was substituted for this forfeiture, and of this the landlord by common right as Littleton saith, by which is meant according to Coke, the common law, was justified in seizing or distraining the goods of the tenant, and holding them, until (he rent was paid. In this state, we conceive it is only necessary to inquire, whether the relation of landlofd *481 hnd tenant exists, whether a rent in money, has been reserved out of the lands leased, and whether it be due. If these inquiries can be answered, ]y, then there is a case, in which remedy by distress is proper, but the remedy must nevertheless be controlled by the provisions of our act of 1811, when applicable, and those of the Virginia act of 1748, when they apply. To proceed then, with the examination of the different opinions given by the circuit court, in the progress of the trial.
Distress warT®nt ci*nnot upontheoath of landlord to whom the ^ payable styling party upon whose does not ne-’ cessarily ex-i^was not landlord, and t0
Diátress war. rant not void through the which rent i duo be omit-
Action of trespass b-- 1 constable1, Tor entering his close, and away'hfs corn, rúate ovi-denoe, and if a1'” Tr"0’6’ tion!'1Ca"
*481 1st. Was the distress warrant, void upon its face, for the reasons assigned? We think it was not. rl?,he record does not exhibit or state the contract by which the tenancy was created. We can only tell wb'o'' was landlord and who tenant from what is stated itylhe distress warrant. A proper construction of the contents of the warrantleads to the conclusion, that B,árnett, was the landlord, and that by the contract,-6f lease, the money wasduetohim. The statement t ha the was agent for Montgomery,does not necessarily exclude the idea, that Barnett was the landlord of Eastin. The na-tareof that agency is not shewn-:' It may be, that Eastin held under Barnett, and not under Montgom-cry, although Barnett might have been Montgomery’s agent. We, therefore, think that the warrant Pro* perly issued on Barnett’s oath, and we are, moreover, of opinion, that it wo^ld be improper to issue a distress warrant ontbe.path of any one except he be the landlord and person'entitled to the rent, for to such an one only, is the power of suing out a distress warrant given, by the. statute.
We carpót concede that the warrant was void, because ft failed to state when, and for what year’s rent the $45 was due. If such a sum was due in reality, it must have been known to the tenant as well as to the landlord, when it became due, and for what year, and we see no necessity for through the warrant, to the defendants, facts which must be within their own knowledge, if thpre be truth in the warrant, as to the amount of rent in arrear.
The warrant was legitimate evidence and properly admitted, and whether the rent claimed was due or *482 not, jf jjie warrant had been levied or distress made uP011 ^10 g°óds and chiittels of- the defendants, it would have justified the constable.
Chango in the tress'by dlS' landlord, at common law, "tatute'oriil6 181 tylt. -Dig. ¡059.
Provisions of the; act of 1748.
2d. Was the instruction given on the application of the defendants, a correct exposition of the law? We think it was not. By the first section of the act of 1811,11. Digest, 1059, the ofticer, in virtue of the warrant, shall be authorized “to distrain on ^e goods, chattels and slaves of the tenant, or of any under tenant claiming and occupying said land, either if directly or indirectly, under said tenant.” To this se°l’on the following proviso is atlaciiéd, “that if the tenant has reinoved himself and property out of the county where the land lies, then and in that case, the said warrant of distress may be-directed to, and exe-cutud hy any sheriff or constable of the county to which Such tenant has removed his or her property.” This section' does, it: is conceived, effect a change in *'•'? com-fioni aw, in one respeect, matrial to be noted. At common law, the distress could only be made upon the leased premises. It is true, that if the tenant or any other person, with a view to prevent the landlord from distraining “drive the cattle” out of the fee of the lord, into some place out of his fee, yet may the ' lord freshly follow and distrain'the cattle, albeit, the • place'wherein the distress is taken, is out -of his fee. But if the lord coming to distrain had no view of the cattle within his fee, though the tenant drive them off purposely, or if the cattle, óf' themselves, after the view, go out of the fee, or if the tenant, after the v.iew, remove them for’any other cause, than to .prevent the lord of his distress,'then cannot the lord dis-train them out of his fee, and if he doth, the tenant may make rescovsfi Co. Lilt. 161, a. The exception-is allowed for the purpose of counteracting fraud, ' but even when the distress is made by fresh pursuit, out of-the fee, Coke says, “in judgment of law, the distress is taken within the fee.” The Virginia act of 1748, allowed ten days after the fraudulent rer. meva! of goods, by the tenant, for the landlord to seize the same goods wherever found,-for a distress, provided the goods so removed, had not been bona fide sold: Jf they had been soid in good faith, they were noli liable to be distrained.
The officer not confined to. malee hi,; distress on the demised premises, he may execute his warrant, any where within his bailiwick.
2(1> seo_ of the statute o,f 181L abr°-fnmfnmf i,OT rule, which the °[a. ble to distress and nothing 0f theiand-lord, oxcept sub-tenañt,'
4th sec. or so-ued™'1' Landlord has ?nlV a Prn-otherTralit-ora, so long a* the produce ro‘nains on premises, or he pan dis-triu“for lni rcar.
Our statute allows the goods, chattels and slaves of the tenant, to be taken, and does not confine the dis tress to the place leased, or “within the fee.''’ It expressly contemplates pursuing the property of the tenant ■without the fee, and, therefore, we are of opinion that the officer may levy or make distress wher-, ever within the bounds of his bailiwick, he can find property, which, by the statute, is subject to the warrant. It is proper here to remark, another difference between the common law and our statute, wherein the provisions of the statute operate as a virtual repeal of the common law.
By the common law, the property of stranger found within the fee, was not exempt from distress, by the lord. True, there were exceptions in favor of trade and commerce, vid - Co. Lit. 47, a. and notes 293 and 295. JLhis rule is to'ally abrogated by the second section of our statute. As the corn claimed by Mitchell, was not found limilhin the fee,” or upon the land leased, and as from the proof, it did not belong to Eastin, the tenant, or any under tenant, and as there is no evidence that “fresh pursuit” was made after it, or within ten days after its removal, it was not subject to distress, either by the principles of the common law, or the statute.. The officer is required to levy on the goods, chattels and slaves of the tenant. or under tenant. If in violation of his duty, he dis-trained the goods of Mitchell, who was neither tenant nor under tenant, the warrant relied on by him, constituted no justification.
We suppose that the judge was influenced, in giving the instruction under consideration, by (hat part the 4th section of the act which says, “nor shall the landlord have any exclusive lien on the property of his tenant or under tenant, except the same is the produce of the farm or place rented or leased.” We do not understand by this expression or sentence, that it was designed by the legislature, to give landlords a lien on the produce of farms leased, equal to the bind-mg eincacy or executions, after delivered, to the officer, so that the tenant cannot sell any part of his crop until the rent is paid, and if he does sell, that the produce sold is liable to the landlord’s lien* in the *484 hands of the Iona fide purchaser. Such a construction would violate the letter and spirit of the 9th section of the Virginia act, which gives ten days for the landlord to distrain property fraudulently removed, whereas the common law required firesh pursuit, and if not taken by fresh pursuit, could never' be seized, when off the land leased. All that is meant by the sentence quoted, in our opinion, is, that as long as the produce of the farm remains on the land leased, and the landlord can distrain for rent in arrear, the produce cannot be taken by other creditors, until the rent due is paid. To this extent the lien of the landlord shall exclude the claims of others, by giving the preference to the distress warrant, but no further. The instruction given goes much further, and is, therefore, erroneous,
Neither the common la w nor statutes, authorize produce sold bona-fide, and removed (rom the premises to be seized and distrain- . 4.
If produce distrained liable to distress not affected by the defendants having other property.
3d sec. of an act of 1811, giving double damages »>;»inst^hnd-wron^ful^dis-tress, does not ®pply '.° °®' virtutfofVi” tress warrant,
*484 2d. It follows, from the foregoing reasoning, that the court ought to have given the first instruction asked for by the plaintiff, and that the court erred again, in stating to the jury, “that a landlord had a lien on the produce of the farm rented, until his rents’ were paid,” without qualification. This opinion of the circuit court is correct, so long as the produce of the farm remains upon it, but when the produce is removed and is sold, bona fide, to another, neither the principles of the common law, nor provisions of the statutes will permit it to be seized as a distress.
3d. As it relates to the-other instructions as moved for by the plainiÉfF, we are of opinion, in regard to the first, that whether the defendants in the warrant had other property sufficient to satisfy the rent due, and all costs or not, can have no bearing on the controversy. If the corn in Mitchel’s possession was liable in any event, its liability" would continue, although there was other property liable, and the officer might exercise his discretion in taking any part of the property which was subject to the distress. The last instruction under the facts exhibited in the record, ought to have been given, with the qualifica-tipQfiif ike jury believed the evidence?
4th. it has been contended in argument, that the judgment is erroneous, under the third section of the *485 Virginia act, because it was not for double the value of the goods or corn distrained. This question is not fairly presented by the record, but as it may occur another trial, it is proper to observe that we are of opinion that such double recovery may be had against a landlord who wrongfully distrains, when no rent is due, but we think that section of the statute does not apply to the officer of the law, who makes distress, in virtue of a warrant sued out under the provisions of the act of t8il. The officer is not bound to know whether there be any rent due, the landlord is, and the third section was designed to punish him for an iniquitous and oppressive proceeding, when he knew better. Besides, until the passage of the act of 1811, the landlord might distrain in person, and the policy of the law is, and ought to be, to guard and protect the citizen against those wrongs, which too often follow the exercise of self redress, by punishing with severity, one who errs when he assumes to judge in his own case. This reasoning does not apply to the mere ministerial officer. Therefore, in respect to him, asNhe must levy at his peril, if under a distress warrant, he seizes property not owned by the defendant in the warrant, we think he should be looked upon in no other light than a trespasser, liable to pay-smart money, if the jury think proper to give it, but nothing as a penalty, under the statute. The plaintiff having united the officer and the landlord, in a joint action of trespass against them, cannot, therefore, get double damages against them, under the statute.
Turner, for plaintiff.
5th. The court erred in refusing to grant a new trial. Wherefore, the judgment of the circuit court is reversed and set aside, and the cause remanded for a venire de novo, and new proceedings, not inconsistent with this opinion.
The plaintiff in error must recover his costs.